Mary Jean **CORBETT** and Bartholomew Corbett, Plaintiffs,

v.

**FIRSTLINE SECURITY, INC., ADT Security Services, Inc, Tyco Fire & Security, Inc., Tyco International Ltd., Honeywell International Inc., Ademco and Dan Brandt, Defendants.**

No. 08–cv–5124 (ADS)(WDW).

United States District Court, E.D. New York.

Dec. 9, 2009.

Vardaro & Helwig, LLP by Bruce M. Helwig, Esq., of Counsel, Smithtown, NY, for the plaintiffs Mary Jean Corbett and Bartholomew Corbett.

John T. Ryan & Associates by Thomas G. Lyons, Esq., of Counsel, Riverhead, NY, Churbuck Calabria Jones & Materazo, P.C. by Robert B. Churbuck, Esq., of Counsel, Hicksville, N.Y. Goldberg Segalla LLP by Brian W. McElhenny, Esq., of Counsel, Mineola, NY, Lewis Johs Avallone Aviles LLP by Claudia L. Boyd, Esq., of Counsel, Melville, NY, Flynn Gaskins & Bennett LLP by George W. Flynn, Esq., of Counsel, Wendy M. Canaday, Esq., of Counsel, Minneapolis, MN, Attorneys for the defendants.

Tyco Fire & Security, Inc., Tyco International LTD., Dan Brandt.

SPATT, District Judge.

Plaintiffs Mary Jean Corbett and Bartholomew Corbett brought the present suit seeking money damages from all the defendants for injuries and losses sustained when their home was allegedly burglarized. The plaintiffs claim that each of the defendants was involved in some way in the sale, installation, monitoring, or main-

tenance of the plaintiffs' home security system, and that the defendants' failures in these capacities resulted in the burglary of their home. Defendant ADT Security Services, Inc. ("ADT") now moves for summary judgment on all claims, arguing that the plaintiffs did not bring their claim against it within the parties' contractually agreed limitations period. For the reasons set forth below, the Court grants ADT's motion in its entirety.

## I. BACKGROUND

Plaintiffs Mary Jean Corbett and Bartholomew Corbett were, at all relevant times, a married couple living in Mount Sinai, New York. On September 19, 2006, Ms. Corbett signed an "Alarm Services Contract" with defendant Firstline Security, Inc. ("Firstline"), thereby purchasing from Firstline a home security system and related security monitoring services. Dan Brandt, a representative for Firstline who met with Ms. Corbett, also signed the contract at that time. Mr. Corbett did not sign the contract.

The Alarm Services Contract was pre-printed and four pages long. The parties agree that Ms. Corbett saw at least the first two pages of the agreement, which are the only relevant pages for the purposes of this decision. On the first page of the contract appear the following notices:

*Notice To Customers*—This is to advise you that Authorized Dealer [Firstline] is an independent Authorized Dealer of ADT Security Services, Inc. The company with which you are now contracting for the installation and/or monitoring of your electronic security system is not an employee or agent of ADT Security Services, Inc. Upon finalization of your contract, it will be submitted to ADT Security Services, Inc. for approval and purchase of the monitoring of your system. You are hereby advised that ADT

Security Services, Inc. reserves the right to reject or otherwise not purchase this contract. If this contract is tendered and rejected or otherwise not purchased, ADT Security Services, Inc. will promptly notify you of that decision so that you may make other arrangements if you so choose.

. .

YOU ADMIT THAT YOU HAVE READ THIS PAGE IN ADDITION TO THE ATTACHMENT WHICH CONTAINS IMPORTANT TERMS AND CONDITIONS FOR THIS CONTRACT BEFORE SIGNING. YOU STATE THAT YOU UNDERSTAND ALL THE TERMS AND CONDITIONS OF THIS CONTRACT, INCLUDING, BUT NOT LIMITED TO, PARAGRAPHS 5, 6, 7, 8, 9, AND 10. . . .

(Pl.'s Mem. L. at Ex. 3 (capitalization and emphasis in original).) Paragraph 10 appears on the second page of the contract, and provides:

10. TIME TO FILE LAWSUIT OR OTHER ACTION. YOU AGREE TO FILE ANY LAWSUIT OR OTHER ACTION YOU MAY HAVE AGAINST U.S. OR OUR ASSIGNEES, AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES OR PARENT COMPANIES WITHIN ONE (1) YEAR FROM THE DATE OF THE EVENT THAT CAUSED THE LOSS, DAMAGE OR LIABILITY.

(Id. (capitalization in original).)

Ms. Corbett also signed at that time a "Schedule of Protection" that included the following text:

This Schedule of Protection is incorporated into the Alarm Services Agreement made this date between Firstline Security, Inc. and the Subscriber, the

terms and conditions of which fully apply to this Schedule of Protection. . . .

I understand that my Monitoring Agreement does include a maintenance plan warranty that only requires a $25 deductible ("Trip Charge") for any service call over 90 days after the installation date.

(Pl.'s Resp. at Ex. 3 ("Monitoring Agreement" is not defined in the Schedule of Protection).)

The plaintiffs assert that Firstline informed them that ADT would ultimately be responsible for monitoring their alarm system, and that they would pay their monthly fee to ADT. However, they state that Firstline told them that it, Firstline, would continue to be responsible for maintenance on the alarm system. According to the uncontroverted affidavit of Barbara Haberkorn, the manager for ADT's Imaging Department, Firstline did in fact assign the Corbetts' contract to ADT upon its finalization. (Aff. of Barbara Haberkorn ¶ 3.)

In April 2007, the Corbetts' alarm system began to malfunction. Ms. Corbett states that she contacted Firstline to schedule repair appointments for May 3, 2007, June 7, 2007, and June 18, 2007, but that at each of these appointments the Firstline repairperson did not show up. (Aff. of Mary Jean Corbett ("Corbett Aff.") ¶¶ 12–14.) Finally, on June 18, 2007 a representative of Firstline informed Ms. Corbett that she should call ADT for service on her alarm system. (Id. ¶ 14.) Ms. Corbett states that she called ADT and scheduled a repair appointment for June 20, 2007 at 8:00 a.m., but that it was too late: approximately 5 hours before the ADT repairperson arrived, the Corbetts' home was broken into. (Id. ¶¶ 16–18.) ADT does not contest these facts for the purpose of this motion.

On July 25, 2008, more than a year after the plaintiffs' home was burglarized, the plaintiffs commenced the present lawsuit in New York Supreme Court Suffolk County. On December 19, 2008 the case was removed to the United States District Court for the Eastern District of New York on diversity grounds, pursuant to 28 U.S.C. §§ 1332 and 1441(a)-(b). On December 29, 2008, ADT answered the plaintiffs' complaint, and on June 4, 2009, prior to any significant discovery taking place, ADT moved for summary judgment on all counts.

## II. DISCUSSION

Although the plaintiffs have not clearly stated distinct causes of action, the Court discerns that the plaintiffs are attempting to assert the following claims against all the defendants: (1) negligence and gross negligence, (2) beach of express and implied warranties, (3) breach of contract, (4) products liability based on design and manufacturing defects, and (5) breach of the duty of care. ADT moves to dismiss all of these claims on the ground that the plaintiffs did not file suit within the one-year statute of limitations provided in the Alarm Services Contract. The plaintiffs assert several points in opposition, discussed below. ADT also urges several other points in its motion for summary judgment, but because the Court finds that the statute of limitations issue is dispositive, the Court does not address any of those additional arguments.

### A. Summary Judgment Standard

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

## B. Choice of Law

The Alarm Services Contract does not contain a choice of law provision, and the parties do not directly address choice of law in their memoranda. However, both parties cite exclusively to New York contract law in their arguments, and the Court views this as an agreement that New York contract law applies in this case. In addition, the Court finds this choice of law comports with New York State's "center of gravity" or "grouping of contacts" choice of law test. *See, e.g., Munzer v. St. Paul Fire and Marine Ins. Co.*, 203 A.D.2d 770, 772, 610 N.Y.S.2d 389 (3d Dep't 1994).

## C. As to Summary Judgment on Ms. Corbett's Claims

The Court first considers the claims against ADT by Ms. Corbett. ADT argues that it should be granted summary judgment on all of Ms. Corbett's claims against it because the contract Ms. Corbett signed with Firstline provides that all lawsuits "against us or our assignees ... [must be filed] within one (1) year" from the date of accrual. "Us" is defined as Firstline.

It is well-settled that courts applying New York law will enforce a shortened statute of limitations when it is reasonable and agreed to by contract. *See, e.g., Cab Associates v. City of New York*, 32 A.D.3d 229, 232, 820 N.Y.S.2d 21 (2006). Indeed, both parties agree on this point of law. Also, New York courts have consistently held one year to be a reasonable period of limitations in similar cases. *See, e.g., Rudin v. Disanza*, 202 A.D.2d 202, 608 N.Y.S.2d 216 (1st Dep't 1994); *Par Fait Originals v. ADT Sec. Systems, Northeast, Inc.*, 184 A.D.2d 472, 586 N.Y.S.2d 2 (1st Dep't 1992); *Diana Jewelers of Liverpool, Inc. v. A.D.T. Co., Inc.*, 167 A.D.2d 965, 562 N.Y.S.2d 305 (4th Dep't 1990). New York courts also enforce contract provisions shortening the limitations period for bringing *any* claim against a party, including claims that sound in tort. *Diana Jew-*

*elers of Liverpool,* 167 A.D.2d at 965, 562 N.Y.S.2d 305; *Par Fait Originals,* 184 A.D.2d at 472, 586 N.Y.S.2d 2. This includes enforcement of contractual limitations periods for claims of gross negligence. *Id.*

Here, the parties have contracted to shorten the limitations period for filing "any" lawsuit against Firstline or its assignees. If enforced, the provision would therefore apply to all claims, including the plaintiffs' allegations sounding in contract and tort. Similarly, the Court finds that the one year period of limitations in the Alarm Services Agreement is reasonable and enforceable under the prevailing law. *See, e.g., Rudin,* 202 A.D.2d at 202, 608 N.Y.S.2d 216; *Par Fait Originals,* 184 A.D.2d at 472, 586 N.Y.S.2d 2.

■ However, the Alarm Services Agreement, on its face, is between Firstline and Ms. Corbett. ADT therefore is not necessarily a beneficiary of the agreement, and arguably may not be able to enforce the contractual limitations period. Generally, a party may invoke the provisions of a contract to which it is not an original party only through theories of "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver [or] estoppel." *Arthur Andersen LLP v. Carlisle,* —— U.S. ——, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009).

■ Here, the theory that applies most directly is "assumption," referred to also as assignment. Under New York law, the benefits and burdens of contracts are freely assumed or assigned absent a contractual provision to the contrary. *See, e.g., In re Stralem,* 303 A.D.2d 120, 123, 758 N.Y.S.2d 345 (2d Dep't 2003) ("Under New York law, contracts are freely assignable absent language which expressly prohibits assignment."). If Firstline assigned the Alarm Services Contract to ADT, then ADT "steps into the shoes" of Firstline, and acquires whatever rights Firstline had under the contract. *See Furlong v. Shalala,* 156 F.3d 384, 392 (2d Cir.1998); *see also Stralem,* 303 A.D.2d at 120, 758 N.Y.S.2d 345. If such an assignment took place, ADT could enforce the shortened limitations period.

In general, the parties agree on the underlying facts with respect to assignment. There is no dispute that Ms. Corbett executed a contract with Firstline for the purchase of a home security system and related monitoring services. The parties also do not dispute that the contract identified Firstline as an "ADT Authorized Dealer," and stated that the contract would be submitted to ADT "for approval and purchase of the monitoring of your system." The parties further agree that the Alarm Services Contract provided that ADT would notify Ms. Corbett only if it rejected the contract or otherwise did not purchase it from Firstline.

ADT has submitted an affidavit asserting that the Corbetts' Alarm Services Contract was in fact assigned to ADT. Ms. Corbett does not contest this issue, and does not assert that she was notified by ADT that it rejected or failed to purchase her contract. To the contrary, Ms. Corbett states that she understood that she would pay ADT the contractual monitoring fee, and that ADT would be responsible for monitoring her security system.

Therefore, based on the record before it, the Court finds that the Alarm Services Contract was assigned to ADT. It therefore follows that ADT, stepping into Firstline's shoes, may enforce all of the terms of the Alarm Services Contract against Ms. Corbett, including the shortened limitations period.

The plaintiffs make several arguments as to why the shortened limitations period

does not apply to Ms. Corbett. None is persuasive.

First, the plaintiffs contend that, "[c]learly Firstline did not have the authority to bind ADT in this contract, therefore at the time Mary Jean Corbett signed the contract it was not binding on ADT." (Pl.'s Resp. at 5.) The Court disagrees. It is immaterial whether ADT was bound at the time of execution of the contract. What is material is that Firstline later assigned the contract to ADT, thus binding ADT to the duties under the contract and, similarly, granting the contract's benefits to ADT.

Second, the plaintiffs argue that ADT cannot enforce the shortened limitations period because "the contract [was not] signed by all parties and once fully executed, delivered to all parties." (Id.) This, too, is not relevant, as ADT does not claim to be—or need to be—a signatory to the agreement, but is rather an assignee of Firstline's contract with Ms. Corbett.

Third, the plaintiffs argue that the "Schedule of Protection" Ms. Corbett signed with Firstline states that Firstline would service the alarm system, and makes no mention of the sale of the contract to ADT. The plaintiffs argue that this conflicts with Firstline's alleged representation in the Alarm Services Agreement that ADT would monitor the alarm system, and thus, "[a]s this action concerns servicing of the equipment the [sic] and the contract and the schedule of protection are in conflict the statute of limitations would not be applicable to the instant action." (Compl. at 5–6.)

The Court finds no logic in this argument. Even if the Schedule of Protection in fact stated that Firstline would service the equipment while the Alarm Services Agreement provided that ADT would monitor it, there would be no inherent conflict in this distribution of responsibilities.

However, both documents relate to services to be provided *by Firstline.* While the Alarm Services Agreement advises Ms. Corbett that the contract would be submitted to ADT for purchase, both documents state that Firstline was the party with whom Ms. Corbett was at that time contracting for services.

Moreover, the Schedule of Protection states:

> This Schedule of Protection is incorporated into the Alarm Services Agreement made this date between Firstline Security, Inc. and the Subscriber, the terms and conditions of which fully apply to this Schedule of Protection.

(Pl's. Resp. at Ex. 3.) This incorporation language provides that the Schedule of Protection and the Alarm Services Agreement are a *single agreement,* and critically, that the terms of the Alarm Services Agreement—including the shortened limitations period—apply to the terms found in the Schedule of Protection. The plaintiffs' third argument is thus without merit.

Fourth, the plaintiffs argue that the shortened limitations period is not applicable because Firstline made a material misstatement of fact at the time the parties entered into the Alarm Services Agreement. The plaintiffs cite to *Incorporated Village of Saltaire v. Zagata,* 280 A.D.2d 547, 720 N.Y.S.2d 200 (2d Dep't 2001) in support of this argument. *Zagata* provides:

> Where the party against which an abbreviated Statute of Limitations is sought to be enforced does not demonstrate duress, fraud, or misrepresentation in regard to its agreement to the shortened period, it is assumed that the term was voluntarily agreed to.

*Id.* The plaintiffs contend that, at the time Ms. Corbett signed the Alarm Services Contract, Firstline stated both in the

Schedule of Protection and verbally that it would be responsible for servicing the plaintiffs' alarm system. The plaintiffs contend that these were material misstatements of fact, because ADT was actually responsible for this service. Therefore, the plaintiffs assert that the Alarm Services Agreement is not enforceable.

 Whether Firstline made statements regarding the future responsibility for servicing the alarm system is an issue of fact. However, it is not a *material* issue of fact in this case. Significantly, the plaintiffs do not claim that they would have rejected the shortened limitations period had they known ADT would be responsible for servicing the alarm system. Moreover, the agreement Ms. Corbett signed was an agreement for services by Firstline. Thus, at the time of signing, Firstline was responsible for performance of all aspects of the contract—including maintenance of the alarm system. The plaintiffs allege that Firstline falsely stated that it would remain responsible for maintenance, but this is an alleged misstatement of future intention, not present fact. Under New York law, statements of future intention, as opposed to statements of present fact, are not a basis for annulling a contract based on fraud. *See, e.g., Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171, 184 (2d Cir. 2007) ("New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement."). The alleged misstatement is therefore not sufficient to obviate the Alarm Services Contract or the shortened limitations period.

 Finally, the plaintiffs note that Firstline filed for bankruptcy on January 25, 2008, and urge that the statute of limitations for filing claims against ADT was therefore tolled pursuant to 11 U.S.C. § 362 and N.Y. C.P.L.R. Rule 204(a). Section 362 provides that actions against a debtor or its estate are automatically stayed upon the debtor's bankruptcy filing, and Rule 204(a) provides:

> (a) Stay. Where the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced.

The plaintiffs therefore argue that, since any action against Firstline was automatically stayed upon its bankruptcy filing, the relevant statute of limitations for actions against Firstline must be tolled.

However, the automatic stay and Rule 204(a) do not toll actions against parties other than the debtor, and thus do not toll actions against ADT. The argument by the plaintiffs is therefore without merit.

Nevertheless, the one consideration that gives the Court pause in enforcing the shortened period of limitations is one that is not briefed by the plaintiff: namely, whether the shortened period of limitations is conscionable. New York courts have long looked askance at enforcement of certain provisions of "adhesion" contracts between a sophisticated party (here, Firstline), and an unrepresented consumer (here, Ms. Corbett), especially when the consumer has the choice only to sign or reject the presented contract. New York courts have repeatedly suggested in dicta that shortened limitations periods may not be enforceable when they are found in contracts of adhesion. *See, e.g., Wayne Drilling & Blasting, Inc. v. Felix Industries, Inc.,* 129 A.D.2d 633, 634, 514 N.Y.S.2d 114 (2d Dep't 1987) ("Absent proof that [a] contract is one of adhesion ... [an] abbreviated period of limitation will be enforced."); *Timberline Elec. Supply Corp. v. Insurance Co.,* 72 A.D.2d 905,

906, 421 N.Y.S.2d 987 (4th Dep't 1979) (same); *accord* Siegel, N.Y. Prac. § 39 (4th ed.) ("[a] court's scrutiny is closer" for an "adhesion contract").

However, in spite of this dicta, courts applying New York law have often enforced limitations of liability in contracts between consumers or small businesses and alarm companies. *See, e.g., Renee Knitwear Corp. v. ADT Security Systems,* 277 A.D.2d 215, 715 N.Y.S.2d 341 (2d Dep't 2000) (upholding a shortened limitations period in a contract between a business and ADT); *Metropolitan Property & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co.,* 95 F.Supp.2d 118, 121–22 (E.D.N.Y.2000) (upholding an exculpatory clause in a homeowner contract with an alarm company). In addition, the Second Circuit has enforced a limitations period of one year for the commencement of any suit when agreed to in a contract of adhesion between an individual and a large company, because the contract "sufficiently alert[ed]" the unsophisticated party to the limitation. *Spataro v. Kloster Cruise, Ltd.,* 894 F.2d 44, 45 (2d Cir.1990). Since the one year period of limitations in the Alarm Service Contract has been held to be reasonable even in a contract of adhesion, the Court thus views the dispositive issue here as whether the Alarm Services Agreement would "sufficiently alert" a consumer to the shortened limitations period.

There are no clear rules as to what is required to sufficiently alert a consumer to the terms of an adhesion contract. *Id.* Here, the shortened limitations period in the Alarm Services Agreement is set forth on its second page in capital letters, and this paragraph is referenced on the first page of the contract. It is written primarily in language understandable to a non-lawyer, and is not so small as to be difficult to read. In reviewing these express

warnings, the Court finds that the operative clause here would "sufficiently alert" a consumer to the shortened limitations period—at least with respect to Firstline.

However, there is an additional question as to whether the contract sufficiently alerts individuals that they are bound by the shortened limitations period with respect not just to Firstline, but also to ADT. To be sure, the unambiguous contractual language provides that the shortened limitations period applies not just to Firstline, but also to its "assignees [thus, ADT], agents, employees, subsidiaries, affiliates or parent companies." (Pl.'s Resp. at Ex. 3.) However, many of these terms, including "assignee," are legal terms of art, and an unrepresented consumer would not necessarily understand the import of this language.

Nonetheless, the Court notes that ADT's insignia appears at the top left corner of the contract, and ADT's name appears no less than nine other times on the first page of the Alarm Services Contract. The contract also includes language explaining that the contract and the services by Firstline will be transferred to ADT. While a consumer may not necessarily know that "assignee" refers to ADT, the Court finds that the contract, taken as a whole, would sufficiently alert a reasonable consumer that the limitations period applies to ADT as well as Firstline.

Therefore, the Court finds that the contractual one year limitations period is conscionable and applies to Ms. Corbett's claims against ADT. As Ms. Corbett filed her claims more than a year after their accrual, they are thus time-barred. The Court therefore grants ADT's motion for summary judgment dismissing the complaint with respect to all claims against it by Ms. Corbett.

## D. As to Summary Judgment on Mr. Corbett's Claims

The plaintiffs contend that Mr. Corbett is not bound by the terms of the Alarm Services Agreement because he is not a signatory to the contract. The plaintiffs argue that Mr. Corbett's claims are therefore not barred by the shortened limitations period.

However, Mr. Corbett was present at the signing of the contract and benefited from it while he lived with Ms. Corbett in their home. Under New York law, Mr. Corbett is therefore a third party beneficiary of the contract Ms. Corbett signed, and is subject to the terms of the Alarm Services Agreement. *See Schietinger v. Tauscher Cronacher Professional Engineers, P.C.*, 40 A.D.3d 954, 956, 838 N.Y.S.2d 95 (2d Dep't 2007) (holding husband to be third party beneficiary, and subject to the terms, of a contract signed by husband's wife for home inspection services, when husband also benefited from the services); *Rector v. Calamus Group, Inc.*, 17 A.D.3d 960, 962, 794 N.Y.S.2d 470 (3d Dep't 2005) (same, except husband signed contract and wife was third party beneficiary). The Court therefore finds that Mr. Corbett is bound by the Alarm Services Agreement, and that his claims against ADT are also barred by the contractual period of limitations. Accordingly, the Court grants ADT's motion for summary judgment dismissing the complaint with respect to all of Mr. Corbett's claims against it.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that ADT's motion for summary judgment is GRANTED, and all claims against ADT are DISMISSED, and it is further

**ORDERED** that the clerk of the Court is directed to amend the caption in this case to read as follows:

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**
———————————————X

MARY JEAN CORBETT and

BARTHOLOMEW CORBETT,

Plaintiffs,

-against-

FIRSTLINE SECURITY, INC., TYCO FIRE &

SECURITY, INC., TYCO INTERNATIONAL

LTD., HONEYWELL INTERNATIONAL

INC., ADEMCO and DAN BRANDT,

Defendants.

————————————————X

**SO ORDERED.**